# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                       )
        v.             )      I.D. No. 1604019882
                       )
BRIAN GOODWIN,         )
                       )
        Defendant.     )

Submitted: August 30, 2019
Decided: September 6, 2019

*Upon Defendant's Motion for Postconviction Relief,*
**DENIED.**

*Upon Postconviction Counsel's Motion to Withdraw as Counsel for Petitioner
Brian Goodwin,*
**GRANTED.**

## ORDER

Albert J. Roop, V, Esquire, State Prosecutor, Stephen J. McCloskey, Esquire, Deputy Attorney General, Department of Justice, 820 North French Street, Wilmington, DE 19801, Attorneys for the State.

Patrick J. Collins, Esquire, 716 North Tatnall Street, Suite 300, Wilmington, DE 19801, Attorney for Defendant Brian Goodwin.

**WHARTON, J.**

This 6th day of September, 2018, upon consideration of Defendant Brian Goodwin's ("Goodwin") timely *pro se* Motion for Postconviction Relief ("PCR),[1] postconviction counsel's Motion to Withdraw as Counsel for Petitioner Brian Goodwin,[2] the State's Response to Defendant's Motion for Postconviction Relief,[3] and the record in this matter, it appears to the Court that:

1.     On July 2, 2016, the Grand Jury indicted Goodwin on the charges of Murder First Degree and Possession of a Firearm During the Commission of a Felony (PFDCF).[4] Goodwin pled guilty to Murder Second Degree and PFDCF on July 18, 2017.[5] The terms of the plea agreement included provisions that Goodwin and the State agreed to a minimum sentence of 25 years at Level V and that the State agreed to limit its incarceration recommendation to 30 years.[6] Nonetheless, despite the limitations to which the parties bound themselves in the pleas agreement, on September 8, 2017, the Honorable John A. Parkins, Jr. sentenced Goodwin to a total of 50 unsuspended years at Level V followed by decreasing levels of supervision.[7] The Delaware Supreme Court dismissed Goodwin's untimely *pro se* appeal on November 30, 2017.[8]

---

[1] D.I. 27.
[2] D.I. 40.
[3] D.I. 43.
[4] D.I. 2.
[5] D.I. 21.
[6] *Id.*
[7] D.I. 25.
[8] D.I. 27.

2

2.      On August 30, 2018, Goodwin filed this *pro se* Motion for Postconviction Relief alleging that: 1) he received ineffective assistance of counsel; 2) his attorney told him his case would "go in front of a group of judges" prior to going before his sentencing judge; 3) and the sentencing judge had a personal bias against him.[9] Patrick J. Collins was appointed as postcoviction counsel on February 28, 2019.[10] On June 6, 2019, Mr. Collins submitted his motion to withdraw as well as his certification that he notified Goodwin of his opportunity to file a response within 30 days.[11] Goodwin has not submitted a response.

3.      In his PCR Motion, Goodwin asserts three grounds for relief. The first is denominated ineffective assistance of counsel. It alleges, "Told me not to worry about manslaughter because I would be giving the same amount of time for the 2nd Murder Plea. That I would do around 18 years out of the 25 yrs."[12] His second claim is captioned "Murder Committee." It states in its entirety, "My attorney told me my case would go in front of a group of judges I don't understand how they can decide what I should get before I see my sentence judge."[13] Finally, his third claim is captioned "Oppress/Personal." It reads, "Judge Parkins had an attitude from the

---

[9] *Id.*
[10] D.I. 36.
[11] D.I. 40.
[12] D.I. 27.
[13] *Id.*

3

start and took this case personal. As my first felony I believe he oversentence me. He never looked at a packet the psychiatrist made. He just tossed it to the side."[14]

4. Before addressing the merits of a defendant's motion for postconviction relief, the Court must first apply the procedural bars of Superior Court Criminal Rule 61(i).[15] If a procedural bar exists, then the Court will not consider the merits of the postconviction claim.[16]

5. Under Delaware Superior Court Rules of Criminal Procedure, a motion for postconviction relief can be barred for time limitations, repetitive motions, procedural defaults, and former adjudications. A motion exceeds time limitations if it is filed more than one year after the conviction becomes final or if it asserts a newly recognized, retroactively applied right more than one year after it was first recognized.[17] A motion is considered repetitive and therefore barred if it asserts any ground for relief "not asserted in a prior post-conviction proceeding."[18] Repetitive motions are only considered if it is "warranted in the interest of justice."[19] Grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred as procedurally defaulted unless the movant can show "cause for relief" and "prejudice from [the] violation."[20] Grounds for relief formerly adjudicated in the case,

---

[14] *Id.*
[15] *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).
[16] *Id.*
[17] Super. Ct. Crim. R. 61(i)(1).
[18] Super. Ct. Crim. R. 61(i)(2).
[19] *Id.*
[20] Super. Ct. Crim. R. 61(i)(3).

4

including "proceedings leading to the judgment of conviction, in an appeal, in a post-conviction proceeding, or in a federal habeas corpus hearing" are barred.[21] Former adjudications are only reconsidered if "warranted in the interest of justice."[22]

6. This PCR Motion is a timely first motion for postconviction relief. Ground One alleges ineffective assistance of counsel. Ground Two arguably alleges ineffective assistance of counsel. Ground Three was never raised at sentencing, by way of a sentence modification motion, or on Goodwin's abortive direct appeal. The State has not suggested that it is procedurally defaulted, however. Accordingly, the Court will consider all three grounds raised by the motion on their merits.

7. To bring an ineffective assistance of counsel claim successfully, a claimant must demonstrate: (1) that counsel's performance was deficient; and (2) that the deficiencies prejudiced the claimant by depriving him or her of a fair trial with reliable results.[23] To prove counsel's deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness.[24] Moreover, a defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.[25] "[A] court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[26]

---

[21] Super. Ct. Crim. R. 61(i)(4).

[22] Id.

[23] Strickland v. Washington, 466 U.S. 668, 688 (1984).

[24] Id. at 667-68.

[25] Wright v. State, 671 A.2d 1353, 1356 (Del. 1996).

[26] Strickland, 446 U.S. at 689.

5

A successful Sixth Amendment claim of ineffective assistance of counsel requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[27] When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a challenged guilty plea, an inmate must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[28] An inmate must satisfy the proof requirements of both prongs to succeed on an ineffective assistance of counsel claim. Failure to do so on either prong will doom the claim and the Court need not address the other.[29] Goodwin cannot demonstrate that counsel's performance was deficient and/or that he would have insisted on going to trial. In fact, Goodwin never alleges anywhere in his motion that, but for counsel's alleged unprofessional errors, he would have insisted in going to trial. Such an assertion is the *sine qua non* of an ineffective assistance of counsel claim in a plea case.

8. The Court turns first to Goodwin's claim labeled "Ineffective Assistance of Counsel." The Court infers from the language of this ground for relief that Goodwin claims that his trial attorney implied or stated that Goodwin would receive

---

[27] *Id.* at 694.

[28] *Albury v. State,* 551 A.2d 53, 59 (Del. 1988) (citing *Hill v. Lockhart,* 474 U.S. 52, 58 (1985)); *Sartin v. State,* 2014 WL 5392047 at *2 (Del.); *State v. Hackett,* 2005 WL 30609076 at *3 (Del. Super. Ct.).

[29] *Strickland,* 466 U.S. at 697; *Ploof v. State,* 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").

a 25-year sentence of which he would serve about 18 years, and that would be true whether he pled guilty to manslaughter or murder second degree. Pursuant to the plea agreement, the parties were limited at sentencing to arguing that Goodwin's Level V sentence should be between 25 and 30 years. Had the sentencing court followed the defense's recommendation of 25 years of incarceration, then it would not have mattered if Goodwin pled guilty to Manslaughter or Murder Second Degree, since the maximum sentence for manslaughter is 25 years at Level V and the plea agreement prohibited Goodwin from asking for less than that.[30] Further, 18 years would have been a reasonable estimation of the actual amount of time Goodwin could have expected to serve on a 25-year sentence. However, while it is likely that trial counsel discussed these possibilities with Goodwin, it is abundantly clear that Goodwin was under no illusions when he entered his plea that the sentencing court could have sentenced him to life, plus 25 years at Level V. The Truth in Sentencing Guilty Plea Form, which Goodwin signed, makes that fact plain.[31] Further, in his plea colloquy with the Court, which was conducted under oath,[32] Gordon told the Court that he understood that the Court could sentence up to life in prison on the Murder Second Degree charge and up to 25 years on the PFDCF charge.[33] It is clear to the Court that there is no factual basis for Goodwin's implied claim that his trial counsel misled him

---

[30] 11 *Del. C.* §§ 632, 4205(b)(2).
[31] App. to Mem. in Supp. Mot. to Withdraw, D.I. 41 at A-86.
[32] *Id.* at A-70.
[33] *Id.* at A-76.

7

as to the possible ranges of punishment he was facing. For that reason, Goodwin has failed to meet the performance prong of *Strickland.* Similarly, Goodwin has failed to meet *Strickland's* prejudice prong since he fails to allege that, but for the claimed error on counsel's part, he would have insisted on going to trial.

9. The Court also rejects Goodwin's second ground for relief because it does not raise a comprehensible claim for relief. In their submissions, postconviction counsel and the State speculate that Goodwin misunderstood something trial counsel may have said about a Department of Justice review of his case. Such speculation is unnecessary. No judicial "murder committee" exists and Goodwin was sentenced in the ordinary course. He does not meet either *Strickland's* performance or prejudice prong as to this claim.

10. Goodwin offers no evidence to support his counterfactual assertions in his third ground for relief that "Judge Parkins had an attitude from the start and took this case personal," and that "he never looked at a packet the psychiatrist made" and "just tossed it to the side." To the contrary, Judge Parkins stated, "I studied anything I could get my hands on in the file,"[34] and, "I looked in detail at the psychological materials."[35] While Judge Parkins did impose a sentence in excess of the State's recommendation, it was within the authorized ranges of sentences. Finally, there is

---

[34] *Id.* at A-10.
[35] *Id.*

8

no evidence to support a claim that the sentence was a product of bias or a closed mind.

THEREFORE, the Defendant's *Pro Se* Motion for Postconviction Relief is DENIED.

Postconviction counsel's Motion to Withdraw as Counsel for Petitioner Brian Goodwin is GRANTED.

IT IS SO ORDERED.

_____
Ferris W. Wharton, J.